## ISADORA GEROULD, APPELLANT, *v.* JAMES R. WILSON, RESPONDENT, IMPLEADED WITH BYRON H. WILSON.

*Revocation of letters of administration — power of surrogate to compel accounting on application of next of kin — mistake in bond, when immaterial.*

May 11, 1864, Byron H. Wilson was appointed administrator of James Wilson, deceased, by the surrogate of Steuben county, and the defendant, James R. Wilson, became a surety upon his bond. November 3, 1864, the letters issued to Byron H. Wilson were, upon the application of his surety, James R. Wilson, revoked. No other administrator was ever appointed. In 1876 the plaintiff, as one of the next of kin, procured a citation, requiring the administrator to account, and an order was made on such accounting requiring him to pay over to her $401.57. The bond having been assigned to the plaintiff, this action was brought upon it.

*Held,* that the surrogate had jurisdiction, upon the plaintiff's application to require the administrator to account, and to decree payment by him of the amount due to the plaintiff.

That the decree made by the surrogate was binding upon the surety, and established *prima facie* the amount due from the administrator.

By mistake the bond provided that the administrator should obey "all the orders of the surrogate of the county of *Ontario*," instead of Steuben. *Held,* that as it appeared that the surety knew of the use to be made of the bond and of its delivery to the surrogate of Steuben county, the mistake was immaterial.

APPEAL from judgment in favor of defendant, entered upon the report of a referee.

The action was brought upon a bond given by Byron H. Wilson as administrator, against the defendant, James R. Wilson, who was a surety on said bond. The bond was filed in Steuben county and letters of administration granted by the surrogate of that county. On the 3d of November, 1864, the surrogate, upon the application of the surety, granted an order removing the administrator and revoking the letters. No successor or new administrator was appointed. In 1876, and after the expiration of eighteen months from the time of his appointment, plaintiff obtained from the surrogate of the county of Steuben a citation requiring the administrator to render an account, and on such accounting an order was made by the surrogate that he pay to plaintiff $401.57, as her share as next of kin. The order was

made on the 25th of February, 1876, by the surrogate of Steuben county.

The administrator's bond was assigned to plaintiff and this action brought against the defendant as surety on said bond, to recover the sum found, as aforesaid, by said surrogate to be due the plaintiff. The plaintiff and the administrator were the only next of kin of the deceased.

By mistake the bond was conditioned that the said Byron H. Wilson should "obey all the orders of the surrogate of the county of Ontario."

*H. M. Field*, for the appellant. The principal in this bond having obtained the possession and control of all the property of this estate, upon the strength of the bond, the principal and his sureties should be held liable on the bond. (*People* v. *Falconer*, 2 Sandf. Sup. Ct., 81; *Kelly* v. *McCormick*, 28 N. Y., 318; *Loaners Bank* v. *Jacoby*, 17 Sup. Ct. R. [Hun], 143; *Wheaton* v. *Fay*, 62 N. Y., 275; *Russell* v. *Freer*, 56 id., 67; 63 id., 388; *Gates* v. *McKee*, 2 Kern., 232; *Wiser, an infant*, v. *Blackly*, 1 Johns. Ch., 607; *Coleman* v. *Bean*, 3 Keyes, 94; *Springsteed, Adm'r, etc.*, v. *Samson*, 32 N. Y., 703.) The contract is to be construed most strongly against the person giving it. (DeColyar on Guarantees, 202; Fell on Suretyship and Guarantees, 503; *French* v. *Cathcart*, 1 Comst., 96, 102.)

*Wm. Rumsey*, for the respondent. The defendant here (the surety) is not liable for the failure of the administrator to obey the order of the surrogate of any county but the county of Ontario. The contract of the surety is the measure of his liability and the extent of it. He is bound only so far as he has agreed to be bound. (*Getty* v. *Binsse*, 49 N. Y., 385, 389; *Lang* v. *Pike*, 28 Ohio St., 488; *Pickersgill* v. *Lahens*, 15 Wal., 140, 144.) The surrogate had not jurisdiction to order said Byron H. Wilson to pay said money to the plaintiff, the plaintiff not being the successor of Byron H. Wilson in the administration of said estate. (2 Edm. Stat., 98, §§ 68, 69; 71; 4 id., 493, § 36; 2 id., 94, § 52; *Annett* v. *Kerr*, 2 Robt., 556, 566.) So far as the decree goes beyond the jurisdiction of the surrogate, it is to be treated as void

everywhere. (*Gilliland* v. *Sellers, Adm'r*, 2 Ohio St., 223; *Gos-sett* v. *Howard*, 10 Q. B., 359 [59 E. C. L.]; 1 Smith's Lead. Cas. [11th ed.], 1100, 1101; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y., 559, 568, 570, 571.)

HARDIN, J. :

Section 52 of the Revised Statutes (2d vol. [Edm. ed.], p. 94), permits any creditor or legatee to apply, after eighteen months from the appointment of an administrator or executor, to the surrogate for a citation requiring an accounting by such administrator or executor. Section 60 provides that if the administrator or executor is so required " to render an account," he may apply to the surrogate for a citation requiring the next of kin, the legatees and creditors, to appear and " attend the settlement of such accounts." Section 68 provides that " whenever the authority of an executor or administrator shall cease or be revoked or superseded for any reason, he may be cited to account before a surrogate, at the instance of the *person* succeeding *to the administration* of the same estate, in like manner as hereinbefore provided for a creditor."

This section provides for a proceeding to be instituted by " the person succeeding to the administration of the same estate." The " manner " of conducting the proceeding shall be like that prescribed for a creditor's proceeding. Thus we find a special course provided where " the authority of the executor or administrator shall cease," or be revoked or superceded for any reason." The sixty-ninth section provides that the executor or administrator may turn round and apply for citations, and cite " the person succeeding to the administration of the same estate, to attend an account or settlement of his proceedings before the surrogate." This enables the executor or administrator, whose authority has ceased or been revoked, to have a final settlement. Section 71 expressly excepts the proceedings instituted under section 68 and 69 from its provisions, in respect to distribution of payments to creditors, legatees, widow and next of kin.

But a careful examination of sections 68 and 69 will lead to the conclusion that the proceedings, then to be taken " at the instance of the person succeeding to the administration of the same estate,"

are permitted to be instituted as soon as the authority of the executor or administrators has ceased or been revoked. " Whenever " the event has occurred, the proceedings may be instituted at the instance of the person succeeding to the estate. As the proceedings may take place early in the course of the administration, there is propriety in excepting such proceeding from the provisions of Revised Statutes (§ 71), which provides for a distributive *decree.*

By the Laws of 1862, chapter 229, the thirty-sixth section of the Laws of 1837, chapter 460, was amended, and it was provided, viz. : The surrogate shall have the same jurisdiction in requiring any executor or administrator whose letters have been revoked, as is conferred by the third article of title 3, chapter 6, of the second part of the Revised Statutes. (2 R. S., 91.)

Here are general words conferring jurisdiction upon the surrogate in cases where the letters have been revoked. The amendment of 1862 further provides that " the new executor or administrator shall, within a reasonable time, or in case of his neglect, *the other person* mentioned in such article may make application for such account, and such application may be made at any time after the revocation of the letters as aforesaid." Here are two provisions which may be availed of. First. If a new executor or administrator is appointed, it is made his duty to proceed within a reasonable time. Second. " Or in case of his neglect the other person mentioned," to wit, " some person having a demand against the personal estate of the deceased, either as creditor, legatee, or next of kin." The concluding part of section 36, as amended in 1862, provides : " Such application may be made at any time after the revocation of the letters as aforesaid."

The letters were revoked by the surrogate 3d of November, 1864. No new administrator was appointed. After the expiration of eighteen months from his appointment, it was competent for the plaintiff, as next of kin of deceased, to apply to the surrogate for an order requiring the administrator to " render an account of his proceedings." The act of 1865, chapter 733, provides additional powers. (1.) Whenever letters shall have been revoked, the administrator " shall be liable to account." (2.) The accounting may be " on the application *of his successor.*" (3.) The surrogate shall have jurisdiction to enforce and settle

such account, and to decree the payment and delivery over to such successor of all assets, money, or property that may have come to his hands as such executor or administrator, remaining undisposed of, and to compel the performance of such decree in the same manner as of decrees made in other cases of accounting.

It does not in terms refer to the antecedent provisions of law upon the subject of the jurisdiction of the surrogate. It does not in terms modify, alter, or repeal the provisions of law then existing. It simply declares such proceedings as are therein named "may be taken" whenever any person shall be removed, * * etc. (2.) That the person "shall be liable to account on the application of his successor," and then it confers in broad terms jurisdiction upon the surrogate to "settle _such account_," and to decree the payment and delivery over to such successor of all assets, money, and property that may come to his hands as such executor or administrator, * * * etc.

The act of 1865 does not by implication repeal the amendments of 1862. Such repeals are not favored. (_McCartee_ v. _Orphan Asylum_, 9 Cowen, 437.) Nor is the act of 1865 inconsistent with, or repugnant to, the provisions of the act of 1862. (_Staats_ v. _Hudson R. R. Co._, 3 Keyes, 196; _Bowen_ v. _Lease_, 5 Hill, 225; _Wallace_ v. _Bassett_, 41 Barb., 96.) We must hold, therefore, that the surrogate had jurisdiction to call upon the administrator to account, upon the application of the plaintiff, who was one of the next of kin, and that when the account was settled and stated by the surrogate's order, it became the duty of the administrator, the defendant's principal, to abide by the order. (_Casoni et al._ v. _Jerome_, 58 N. Y., 315.)

The surrogate having jurisdiction of the subject-matter and of the person of the administrator his order must be upheld. The decree made by the surrogate is _prima facie_ evidence of the amount due from the administrator as against the defendant — his surety. (_Douglass_ v. _Howland_, 24 Wend., 55; _Annett_ v. _Terry_, 35 N. Y., 261.) The surety was privy to the proceedings, and in the absence of fraud or collusion is bound by the decree of the surrogate. (58 N. Y., 322.)

The bond of the administrator was conditioned that he "shall faithfully execute the trust reposed in him as such." This pro-

vision is in accordance with the requirements of the statute. (2 R. S., 78, § 42.) We think the insertion of the word "Ontario" instead of "Steuben," prior to county, did not, under the circumstances disclosed by the evidence, prevent the administrator and his sureties from being bound to the performance of its condition. The use to be made of the bond seems to have been understood by the principal and the surety when it was executed, and shortly after its delivery to the surrogate of Steuben, and his appointment of the administrator, the surety applied to the surrogate of Steuben to be released from the bond. (*Casoni* v. *Jerome*, 58 N. Y., 315; *Coleman* v. *Bean*, 3 Keyes, 94; *Rowe* v. *Parsons*, 6 Hun, 338.)

We think the judgment should be reversed, and a new trial ordered before another referee, with costs to abide the event.

So ordered.

TALCOTT, P. J., concurred; SMITH, J., not voting.

Ordered accordingly.